IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **AUTOTEL, a Nevada Corporation,**<br><br>    Plaintiff,<br><br>vs.<br><br>**QWEST CORPORATION, a Colorado Corporation, THE PUBLIC SERVICE COMMISSION OF UTAH, and RIC CAMPBELL, Chairman, CONSTANCE B. WHITE, Commissioner and TED BOYER, Commissioner, in their official capacities as Commissioners of the Public Service Commission of Utah,**<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:04cv01052DAK |

This matter is before the court on Defendant Qwest Corporation's ("Qwest") Motion to Dismiss and on Defendants Public Service Commission of Utah (the "PSCU"), Ric Campbell, Constance White and Ted Boyer's (collectively the "Commissioners") combined Motion to Dismiss Pursuant to Rule 12(b)(1).  A hearing on the motion was held on May 5, 2005 at 3:00 p.m.  At the hearing, Plaintiff was represented by Marianne Dugan and Robert L. Lord, Defendant Qwest was represented by Gregory B. Monson, and Defendants PSCU and the Commissioners were represented by Sandy Mooy.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**INTRODUCTION**

Plaintiff Autotel has brought this action under the Telecommunications Act of 1996 (the "Act"), Pub. L. No. 104-104, 110 Stat. 56 (1996 ) (codified as amended in scattered sections of Title 47 of the United States Code) against Defendants Qwest, PSCU and the Commissioners. In short, Autotel seeks review of a PSCU order issued pursuant to the Act. Qwest, in its own motion, and PSCU and the Commissioners, in a combined motion, have moved the court to dismiss the action for lack of subject matter jurisdiction. For the following reasons, their motions are granted.

**RULE 12(b)(1) STANDARD**

The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter. *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) (citing *Marcus v. Kan. Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999)). Where a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts. *Id*. (citing *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000)).

**BACKGROUND**

A.   **The Telecommunications Act of 1996**

The Act, which amends the Communications Act of 1934, was designed to "secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid development of new telecommunications technologies" by promoting competition and reducing regulation of the telecommunications industry. Pub. L. No. 104-104, 1996

U.S.C.C.A.N. (110 Stat.) 10, 11.  One way in which the Act seeks to accomplish these goals is by the forced deregulation of state-sanctioned local telecommunications monopolies.  Before Congress passed the Act, state public utility commissions regulated local telecommunications markets by granting companies that incurred the expense of establishing local networks (incumbent local exchange companies or "ILECs") the exclusive right to provide service in the areas covered by their systems.  In return, ILECs allowed the state commissions to regulate local service rates.  The Act seeks to break these telecommunications monopolies by requiring existing ILECs to share or "interconnect" their local networks with new entrants, known as competitive local exchange companies ("CLECs"), so that CLECs may offer competitive local telephone services to the public.  *See* 47 U.S.C. § 251(c).

"Section 251 of the 1996 Act describes the various ways ILECs are required to share their networks with competitors in order to promote market entry by CLECs, and sets out detailed rules implementing the general duty of telecommunications carriers to interconnect with each other's facilities and equipment."  *Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*, 287 F. Supp. 2d 532, 535 (D. N.J. 2003); *see* 47 U.S.C. § 251.  Specifically, section 251 requires ILECs to permit CLECs to "(1) utilize the [I]LECs network and facilities; (2) purchase unbundled network elements from the [I]LEC; (3) purchase at wholesale rates any telecommunications service that the [I]LEC provides at retail to subscribers who are not telecommunications carriers."  *GTE North, Inc. v. Strand*, 209 F.3d 909, 913 (6th Cir. 2000) (citing 47 U.S.C. § 251(c)(2)-(4)).  The Act further requires that the ILEC and CLEC enter into an interconnection agreement fulfilling the duties described in section 251 by following the procedures set forth in

3

section 252.  *See* 47 U.S.C. § 251(c)(1).

Section 252 articulates a four-step process to guide the parties towards an interconnection agreement which complies with the requirements set forth in Section 251.  First, the Act provides that the parties can privately agree on the terms of an interconnection agreement through either voluntary negotiation or mediation.  *Id*. at § 252(a).  The ILEC has a duty to act in good faith when negotiating interconnection agreements with its competitors.  *Id*. at §§251(c)(1); 252(b)(5).  Second, the Act provides that if private negotiation fails, either party can, during the 135th to the 160th day after the ILEC receives a request for negotiation, petition the state commission to arbitrate any open issues.  *Id*. at § 252(b)-(c).  Third, the Act provides that all interconnection agreements, whether adopted by negotiation or arbitration, must be submitted to the state commission for approval.  Once submitted, the state commission is to approve or reject the agreement.  *Id*. at § 252(e)(1).  The state commission has limited grounds on which it may base a rejection of an agreement.  *Id.* at § 252(e)(2).  Lastly, after the state commission makes a determination, "any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section."  *Id*. at § 252(e)(6).

**B.     The Parties**

The Plaintiff, Autotel, is a licensed Commercial Mobile Radio Service ("CMRS") provider which intends to offer wireless telephone services in the Cedar and St. George areas of Utah in competition with the ILEC.  Autotel qualifies under the Act as a "telecommunications carrier" and "requesting carrier."  *See* 47 U.S.C. §§ 153(44); 252(a)(1).  Defendant Qwest is the

ILEC which provides local exchange services for the majority of businesses and residences in the State of Utah and which currently provides services to the Cedar and St. George areas.  Qwest controls the switches, lines and other telecommunications network equipment necessary to provide local telephone service for these areas.  Defendant PSCU is the administrative agency for the State of Utah responsible for regulating the intrastate operations of telecommunications carriers.  The PSCU acts through its commissioners, which have each been individually named as Defendants in this action and are being sued in their official capacities.

      C.      **The Dispute**

In August of 1996, Autotel's affiliate, Western Radio Services Co., and Defendant Qwest's predecessor, US West, began negotiating the terms of an interconnection agreement pursuant to the Act.  These negotiations did not resolve all of the issues between the parties.  Accordingly, on March 5, 2003, Autotel filed a petition for arbitration with the PSCU identifying nine issues for arbitration.  In its response to the petition, Qwest identified six additional issues for arbitration.  After the petition was filed, several settlement conferences were held during which seven of the issues were resolved by the parties, leaving eight issues for arbitration.

The remaining eight issues were fully briefed by both parties and testimony regarding the issues was filed with the PSCU.  On February 18, 2004, the PSCU issued a Report and Order In the Matter of the Petition of Autotel for Arbitration of an Interconnection Agreement with Qwest Corporation Pursuant to Section 252(b) of the Telecommunications Act, Docket No. 03-049-19 (the "Report and Order").  The Report and Order analyzed each of the eight issues and made a determination regarding each of the issues.  The PSCU then ordered that:

  1. The interconnection agreement between Autotel and Qwest Corporation shall be modified as set forth above. The agreement, as so modified, is approved.

  2. The parties shall submit an interconnection agreement reflecting the determinations in this order within 30 days.

Report and Order at 11.

  Autotel modified its interconnection agreement and submitted it to Qwest for its approval and execution well within the thirty-day period required by the Report and Order. Qwest refused to sign the agreement submitted by Autotel, arguing that it did not comply with the terms of the Report and Order. Qwest instead drafted its own interconnection agreement for Autotel's signature. Autotel then refused to sign Qwest's interconnection agreement, claiming that it did not comply with the Report and Order and contained substantive changes which were neither negotiated nor arbitrated. On March 19, 2004, Qwest filed with the PSCU a "Notice of Inability to File Signed Agreement and Request for Approval of Proposed Agreement" ("Notice"). Qwest's Notice notified the PSCU of the parties' inability to agree upon an interconnection agreement within the required 30 day period. Attached to Qwest's Notice was its proposed interconnection agreement along with an electronic comparison highlighting the differences between its proposed agreement and Autotel's proposed agreement. Qwest requested that the PSCU approve its proposed agreement. Autotel did not file a response to Qwest's Notice, but instead filed suit in this court on November 12, 2004. In light of the suit, PSCU has not yet addressed Qwest's Notice.

  Autotel has alleged four causes of action: 1) that the PSCU's Order failed to comply with Sections 251 and 252 of the Act; 2) that Qwest has failed to negotiate the interconnection

agreement in good faith as required by the Act and has refused to execute the interconnection agreement prepared by Autotel in compliance with PSCU's Report and Order; 3) that it has suffered damages as a result of the Defendants' violations of the Act; and, 4) that it has incurred attorneys' fees as a result of Qwest's violations of the Act.  In response, Qwest, in its own motion, and the PSCU and Commissioners, in a separate motion, have moved the court to dismiss Autotel's entire action for lack of subject matter jurisdiction.

## DISCUSSION

The Defendants contend that pursuant to 47 U.S.C. § 262(e)(6), a court is granted jurisdiction to review actions taken by a state commission during the negotiation and approval of an interconnection agreement only after a state commission has made a final agency decision either approving or rejecting an interconnection agreement.  The Defendants argue that because there is no interconnection agreement between Autotel and Qwest which the PSCU has either approved or rejected, the court lacks subject matter jurisdiction over each of Autotel's causes of action.  Qwest additionally argues that regardless of whether the PSCU has made a decision to approve or reject the interconnection agreement, Autotel's Second, Third and Fourth Causes of Action lie wholly outside the court's jurisdiction.  The PSCU and the Commission also separately claim that they should be dismissed from the action because the court is precluded by the Eleventh Amendment of the United States Constitution from exercising jurisdiction over state defendants.

Autotel argues that the issue of whether the court has jurisdiction over this action pursuant to 28 U.S.C. § 252(e)(6) is irrelevant because the court has jurisdiction pursuant to 28

U.S.C. § 1331. Autotel then argues that because the PSCU approved an interconnection agreement between Autotel and Qwest, the court has jurisdiction pursuant to 28 U.S.C. § 252(e)(6). Autotel additionally contends that the PSCU and Commissioners should not be dismissed from the action because by choosing to participate in the arbitration of the interconnection dispute, they voluntarily waived their sovereign immunity from suit. Autotel also maintains that the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), permits its action against the PSCU and Commissioners.

### A. Jurisdiction to Review Autotel's First Cause of Action Pursuant to 28 U.S.C. § 1331.

The Defendants argue that pursuant to the specific provision set forth in 47 U.S.C. § 252(e)(6), jurisdiction can be conferred upon the court only after the PSCU has approved or rejected an interconnection agreement between Autotel and Qwest. Section 252(e)(6) provides that:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

47 U.S.C. § 252(e)(6). Courts have consistently interpreted this section as granting federal district courts jurisdiction only once a state commission has made a decision to approve or reject an interconnection agreement.[1]

---

[1] *GTE North, Inc. v. Strand*, 209 F.3d 909 (6th Cir. 2000); *Atlantic Alliance Telecommunications, Inc. v. Bell Atlantic*, 2000 WL 34216867 (E.D.N.Y. 2000); *GTE North Inc. v. McCarty*, 978 F. Supp. 827 (N.D. Ind. 1997); GTE South, Inc. v. Breathitt, 963 F. Supp. 610 (E.D. Kentucky 1997); *GTE Florida Inc. v. Johnson*, 964 F. Supp. 333 (N.D. Fla. 1997); *GTE South Inc. v. Morrison*, 957 F. Supp. 800 (E.D. Va., 1997); *GTE Northwest, Inc. v. Nelson*, 969 F. Supp. 654 (W.D. Wash., 1997); *GTE Southwest Inc. v. Graves*, 989 F. Supp. 1148 (W.D. Okla., 1997); *GTE North Inc. v. Glazer*, 989 F. Supp. 922 (N.D. Ohio 1997); *GTE Northwest Inc. v. Hamilton*, 971 F.Supp. 1350 (D. Or. 1997).

Autotel claims that regardless of whether Section 252(e)(6) grants the court jurisdiction, the court has general jurisdiction under 28 U.S.C. § 1331. In making this argument, Autotel relies on the Supreme Court's recent decision in *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 122 S. Ct. 1753, 152 L. Ed.2d 871 (2002). In *Verizon*, the issue before the Court was whether the federal district court had jurisdiction to review a state commission's order which interpreted a provision set forth in an approved interconnection agreement. The Court determined that regardless of whether Section 252(e)(6) implicitly grants a court the authority to review a commission's determination interpreting or enforcing an approved interconnection agreement, it does not "divest the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." *Id*. at 642. The Court therefore held that the court had jurisdiction under 28 U.S.C. § 1331 to review the state commission's order interpreting the approved interconnection agreement.

Autotel's reliance on *Verizon* is misplaced. In *Verizon*, the question before the Court was whether it had jurisdiction to review determinations made by a state commission <u>after</u> the approval of an interconnection agreement, *i.e.*, after final agency action. Here, the question the court must consider is whether it has jurisdiction to review determinations made by a state commission <u>before</u> the approval of an interconnection agreement. Whether a court may engage in judicial review prior to the completion of a state commission's administrative process involves a completely different analysis than the extent of a court's jurisdiction once the administrative process is complete.

The Supreme Court has held that judicial review prior to final agency action is

9

inappropriate where a statute's "comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a 'fairly discernible' intent to preclude district court review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994)(citation omitted).  The question before the court, therefore, is whether the Act intended to preclude district court review prior to final agency action.  An examination of the Act's clear language, purpose, and structure compels the conclusion that Congress intended to preclude district court review until a final order either approving or rejecting an interconnection agreement has been entered by a state commission.

Section 252(e)(6) states that "any party aggrieved by such determination may bring an action in an appropriate Federal district court . . . ." 47 U.S.C. § 252(e)(6).  Section 252(e)(6) then goes on to limit the Court's review to determining "whether the agreement . . . meets the requirements" of section 251 and 252.  *Id*.  The inclusion of the word "agreement," which clearly refers to an interconnection agreement, modifies the word "determination" in such a way as to make the most likely interpretation of "determination" to be a commission's final determination of whether to approve or reject an interconnection agreement.  "If Congress had intended to give courts authority to review any determination of a state commission at any time, there would have been no need to include the reference to an agreement." *GTE North Inc. v. McCarty*, 978 F.Supp.827, 834 (N.D.Ind.1997).  The explicit language of Section 252(e)(6) therefore compels the conclusion that federal district courts are granted jurisdiction only once a final determination approving or rejecting an interconnection agreement is made.

The structure of the statute also supports this interpretation. The Act provides that if the parties cannot reach an interconnection agreement within 135 days after the initial request for negotiations, either party can petition the state commission for binding arbitration of open terms. *See* 47 U.S.C. § 252(b)(1). Upon receiving such a petition for arbitration, the commission is required to resolve all issues set forth in the petition within nine months of the initial request for negotiations. *See* 47 U.S.C. § 252(b)(4)(C). Once an agreement is adopted by the parties, the commission must either approve or reject the agreement within 90 days of submission in cases of negotiated agreements and within 30 days of submission in the cases of arbitrated agreements. *See* 47 U.S.C. § 252(e)(4). Section 252's compressed time schedule evidences Congress' intention that disputes regarding interconnection agreements be resolved expeditiously.

The legislative history also explains that the purpose of the Act is "to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition[.]" H.R. Rep. No. 104-458, at 13 (1996) *reprinted in* 1996 U.S.C.C.A.N. 10, 124. Congress clearly intended that interconnection agreements be entered into and approved quickly. If the court could review any determination made by the Commission during the negotiation and approval process, an interconnection agreement would not be entered into and approved quickly. The Act's structure and purpose therefore also support the conclusion that Congress intended federal district courts to have jurisdiction to review only final orders by a commission either approving or rejecting an interconnection agreement.

If Autotel's claim fell within 28 U.S.C. § 1331's general grant of jurisdiction, as Autotel

argues, the court could review any determination made by the PSCU during the negotiation and approval process.  The result of such piecemeal litigation would be the almost indefinite delay of the PSCU's decision to approve or reject an interconnection agreement.  Such an interpretation is clearly in derogation of the Act's purpose of rapidly opening telecommunications markets to competitors.  Taking the clear language of the statute, its structure, and its purpose, it is fairly discernible that Congress "intended that State commission administrative processes remain unimpeded until an interconnection agreement is completed and approved."  *GTE North Inc. v. Glazer*, 989 F. Supp. 922, 925 (N.D. Ohio 1997).  The court therefore rejects Autotel's contention that the court has general jurisdiction over Autotel's First Cause of Action pursuant to 28 U.S.C. § 1331 and finds that Section 252(e)(6) precludes district court review until a final order either approving or rejecting an interconnection agreement has been entered by the PSCU.

      **B.**      **Jurisdiction to Review Autotel's First Cause of Action Pursuant to 47 U.S.C. § 252(e)(6).**

Autotel additionally argues that the court has jurisdiction over Autotel's First Cause of Action pursuant to Section 252(e)(6).  Autotel asserts that the PSCU's Report and Order constitutes a final determination approving an interconnection agreement between Autotel and Qwest.  In making this assertion, Autotel relies on the Report and Order which states that "[t]he interconnection agreement between Autotel and Qwest Corporation shall be modified as set forth above.  The agreement, as so modified, is approved." Report and Order at 11.  Autotel argues that because the Order states that "the agreement, as modified <u>is approved</u>," it is clear that the PSCU has made a final determination approving an interconnection agreement.

      Autotel then contends that Qwest's Notice, in which Qwest presented its proposed

interconnection agreement to the PSCU, constitutes a petition for reconsideration of the Order. Autotel argues that because the PSCU has made a final determination approving an interconnection agreement, the court need not await a determination by the PSCU of Qwest's petition for reconsideration before exercising judicial review. *See AT&T Comm. Sys. v. Pac. Bell*, 203 F.3d 1183 (9th Cir. 2000) (holding that the court had jurisdiction to review a commission's determination approving an interconnection agreement even though a petition for rehearing required under state law had not been decided).

Autotel's assertion that the PSCU has made a final determination approving an interconnection agreement between the parties is based on a misinterpretation of the Report and Order. Although the Report and Order does state that "[t]he agreement, as so modified, is approved," it goes on to state that "[t]he parties shall submit an interconnection agreement reflecting the determinations in this order within 30 days." Report and Order at 11. The PSCU arbitrated only eight issues upon which the parties could not reach an agreement. Although the PSCU made a determination as to these eight issues, it had not been presented with a complete interconnection agreement reflecting all of the terms negotiated by the parties. The PSCU's order that the parties submit a complete interconnection agreement within 30 days makes clear that it had not yet made a final determination approving an interconnection agreement in its entirety.

After issuance of the Report and Order, Autotel modified its interconnection agreement and submitted it to Qwest for its approval and execution. Qwest refused to sign the agreement submitted by Autotel arguing that it did not comply with the terms of the Order. Qwest then

13

drafted its own interconnection agreement for Autotel's signature. Autotel refused to sign Qwest's interconnection agreement claiming that it did not comply with the Report and Order and contained substantive changes which were neither negotiated nor arbitrated. On March 19, 2004, Qwest filed with the PSCU the Notice in which it made the PSCU aware of the parties' inability to agree upon an interconnection agreement within the required 30 day period. Qwest attached to its Notice its proposed interconnection agreement along with an electronic comparison highlighting the differences between its proposed agreement and Autotel's proposed agreement and requested that the PSCU approve its proposed agreement.

Based on the above undisputed facts, the court finds that the parties did not submit an executed interconnection agreement to the PSCU as required by 47 U.S.C. § 252(e)(1). Without the submission of an interconnection agreement, the PSCU could not "act to approve or reject the agreement." *See* 47 U.S.C. § 252(e)(4).[2] A final state agency action approving or rejecting an interconnection agreement between the parties has not yet occurred. Qwest's Notice, therefore, does not constitute a petition for the PSCU to reconsider a decision approving an interconnection agreement as Autotel claims.

Autotel argues that at the very least, the Report and Order constituted a final determination as to the eight issues arbitrated by the PSCU. Autotel claims that the PSCU's final

---

[2] Autotel appears to alternatively argue that because its proposed interconnection agreement incorporates all of the provisions approved by the Commission, and because the PSCU has not made a determination to approve or reject Qwest's proposed interconnection agreement, its agreement is the operative agreement between the parties. Section 252(e)(4) states that "[i]f the State commission does not act to approve or reject the agreement . . . within 30 days after submission by the parties of an agreement adopted by arbitration . . . the agreement shall be deemed approved." 47 U.S.C. § 252(e)(4). The court finds, however, that Autotel's agreement was never signed by Qwest and was never submitted to the PSCU for approval. Autotel's proposed interconnection agreement, therefore, could in no way be "deemed" approved pursuant to § 252(e)(4).

14

decision to accept Qwest's proposed language in five of the arbitrated issues constitutes a violation of the Act.  Autotel contends that it should be able to challenge this decision now instead of spending the time and money to finalize an interconnection agreement which it already knows contains provisions which violate the Act.

> The court is not persuaded by Autotel's argument.  Although the PSCU's Report and Order seems to make a final determination as to the eight issues arbitrated, a commission "cannot finally rule on issues addressed by its orders until it has seen how those issues function, both economically and pragmatically, in the context of a complete interconnection agreement." *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 805 (E.D. Va.1997).  It is possible that the PSCU could decide upon final review that certain terms of its Order do not make sense when viewed in the context of the complete interconnection agreement.   In addition, "the parties could subsequently agree to terms other than those prescribed by [the] arbitration order . . . ." *GTE North Inc. v. McCarty*, 978 F. Supp. 827, 835 (N.D. Ind. 1997).

There is no guarantee that the provisions approved in an arbitration order will be the same provisions ultimately approved in a final interconnection agreement.  The review of an arbitration order could therefore result in piecemeal judicial review in derogation of the Act's purpose.  The court accordingly rejects Autotel's contention that the PSCU's Report and Order constitutes a final determination and finds that until the PSCU makes a final determination either approving or rejecting an interconnection agreement between Autotel and Qwest, it lacks jurisdiction to review Autotel's First Cause of Action.

### C.  Jurisdiction to Review Autotel's Second, Third, & Fourth Causes of Action.

Autotel additionally asserts that the court has jurisdiction to review its Second, Third, and Fourth Causes of Action pursuant to either 28 U.S.C. § 1331 or 47 U.S.C. §§ 206, 207.[3] These remaining causes of action center around Autotel's allegation that Qwest has failed to negotiate the interconnection agreement in good faith as required by the Act. The Defendants argue that the court lacks jurisdiction to consider these causes of action because under Section 252(e)(6), the court is granted subject matter jurisdiction under the Act only once the PSCU has made a determination either approving or rejecting an interconnection agreement. Qwest additionally argues that regardless of whether the PSCU has made a decision to approve or reject an interconnection agreement, these causes of action lie wholly outside the court's jurisdiction.

The court has already determined that it does not have jurisdiction to review whether the PSCU's Report and Order violates the provisions of the Act until the PSCU has made a final determination either approving or rejecting an interconnection agreement. The court has also determined that the PSCU has not yet made a final determination either approving or rejecting an interconnection agreement. The remaining question before the court, then, is whether it has jurisdiction to determine whether Qwest has violated Section 251 or 252 of the Act by failing to negotiate in good faith where the PSCU has not yet made a final determination.

---

[3] Section 206 provides a cause of action for consumers who were injured by errors in delivery of telegraphs and similar omissions. Section 206 specifically states "[i]n case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." 47 U.S.C. § 206. It is actually Section 207 which grants jurisdiction to federal district courts over such actions.

As stated previously, in determining whether Congress intended the federal district courts to engage in judicial review prior to the completion of a state commission's administrative process, the court must analyze the Act's "language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin*, 510 U.S. at 207. Section 251(c)(1) of the Act states that ILECs have a "duty to negotiate in good faith in accordance with section 252 of this title the particular terms and conditions of the agreements . . . ." Section 252 then sets forth procedures for the negotiation, arbitration and approval of agreements. Section 252(a)(2) provides that any party negotiating an interconnection agreement may ask a state commission to mediate any differences arising between the parties in the course of the negotiation. Section 252(b) further allows any party to the negotiation to petition the commission to arbitrate any open issue between the 135th to the 160th day after the request for negotiation. Section 252(b)(5) provides that:

> The refusal of any other party to the negotiation to participate further in the negotiations, to cooperate with the State commission in carrying out its function as an arbitrator, or to continue to negotiate in good faith in the presence, or with the assistance, of the State commission shall be considered a failure to negotiate in good faith.

47 U.S.C. § 252(b)(5). Essentially, the Act grants state commissions authority to oversee the negotiation of interconnection terms through mediation and arbitration. It is obvious that in granting this authority, Congress intended state commissions to be the initial decision maker regarding issues arising out of the negotiation process, including whether a party has failed to negotiate in good faith. *See Global Naps*, 287 F. Supp. 2d at 545 (holding that Congress did not intend for parties to bring claims for violations of the Act pursuant to Sections 206 and 207, but

intended for state commissions to be the initial decision maker regarding whether a party has failed to negotiate an interconnection agreement in good faith).

This intention is also reflected in the purpose of the Act. The purpose of the Act is to create a comprehensive statutory scheme designed to promote competition in the telecommunications industry by expediting the formation of interconnection agreements between CLECs and ILECs. *Global Naps,* 287 F. Supp. ``2d at 544. Granting the court jurisdiction to review all alleged concerns with another party's approach to negotiation of an interconnection agreement would not comport with this scheme. It would instead result in piecemeal litigation which would delay the negotiation process. State commissions, on the other hand, have been granted the authority to force a recalcitrant party to participate in the negotiation process and direct the inclusion of appropriate terms in the interconnection agreement. "The preference for speedy action supports an interpretation of the Act favoring initial review by the state commission." *Atlantic Alliance Telecomm. Inc. v. Bell Atlantic*, 2000 WL 34216867 at *3 (E.D. N.Y. 2000) (finding that § 207 did not grant a court jurisdiction to review a claim that a party breached the duty to negotiate in good faith imposed by § 251(c)(1)).

The structure of the Act additionally supports a finding that the court lacks jurisdiction until a final determination has been made by the state commission. As explained in detail previously, Section 252(e)(6) specifically limits federal district court jurisdiction until a state commission's final determination is made. The grant of jurisdiction set forth in 28 U.S.C. § 1331, on the other hand, is not specific to the Act. Similarly, while Sections 206 and 207 grant broad jurisdiction to district courts, "they were not enacted as part of the comprehensive scheme

set out in the Telecommunications Act of 1996."[4]  *Atlantic*, 2000 WL 34216867 at *4.  The fact that Congress enacted a specific jurisdictional limit on federal district courts as part of the same section in which it grants state commissions initial authority over the negotiation, arbitration, and approval of interconnection agreements strongly evidences an intent that the court's jurisdiction be limited to that set forth in Section 252(e)(6).

"The statute's language, structure, purpose, and legislative history suggest that Congress intended disputes such as this to be addressed by the state commission in the first instance." *Atlantic*, 2000 WL 34216867 at * 4.  Neither the jurisdictional grant set forth in 28 U.S.C. § 1331 nor in 47 U.S.C. §§ 206 and 207 are applicable given Congress' creation of an administrative remedy to resolve issues surrounding the negotiation of interconnection agreements.  Section 252(e)(6) therefore exclusively governs jurisdiction in this situation.  Because the PSCU has not made a final determination either approving or rejecting an interconnection agreement, this court also lacks jurisdiction to review Autotel's Second, Third, and Fourth Causes of Action.  Accordingly, Autotel's entire case must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[5]

---

[4] Sections 206 and 207 instead date back to the original 1934 Communications Act and were intended to provide a cause of action for consumers who were injured by errors in the delivery of telegraphs and similar acts or omissions.  *See Id*; *see also Global Naps*, 287 F.Supp.2d at 544.

[5] In light of this dismissal, the Court need not determine whether Autotel's Second, Third, and Fourth Causes of Action are wholly outside the Court's jurisdiction regardless of whether a final determination has been made by the PSCU.  In addition, the Court also need not determine at this time whether it would be precluded by the Eleventh Amendment of the Constitution from exercising jurisdiction over the PSCU and the Commissioners.

## CONCLUSION

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that:

1) Defendant Qwest's Motion to Dismiss is GRANTED;

2) Defendants PSCU and the Commissioner's combined Motion to Dismiss under Rule 12(b)(1) is GRANTED; and

3) Autotel's above-entitled action is dismissed without prejudice for lack of subject matter jurisdiction.

DATED this 17th day of May, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge